THE STATE OF KANSAS, *Appellee,* v. IRA BRECOUNT, *Appellant.*

No. 16,686.

SYLLABUS BY THE COURT.

1. HOMICIDE—*Excusable—Intent with Which the Act Was Done.* Homicide, to be excusable within the provisions of section 1995 of the General Statutes of 1901 (Gen. Stat. 1868, ch. 31, § 10), must have resulted from an act committed with lawful intent. It is not enough that the act is one which under ordinary circumstances would be lawful and is committed by means ordinarily lawful and with the usual and ordinary caution. There must be absence of unlawful intent.

2. CRIMINAL LAW — *Preliminary Examination — Complaint — Coroner's Warrant.* A coroner's warrant for the arrest of a person found guilty by a coroner's jury takes the place of a complaint, and is sufficient authority for the holding of a preliminary examination before an examining magistrate.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed March 12, 1910. Affirmed.

*C. W. Roberts,* and *F. L. Richardson,* for the appellant.

*Fred S. Jackson,* attorney-general, *Ed J. Fleming,* county attorney, and *C. S. Beekman,* for the appellee; *C. T. Atkinson,* of counsel.

The opinion of the court was delivered by

PORTER, J.: Ira Brecount was convicted of manslaughter in the fourth degree and sentenced to serve a term in the penitentiary not exceeding two years. From this judgment he appeals.

The accident upon which the prosecution is based happened in Arkansas City on the first day of July, 1908. The appellant was a substitute fireman in the employ of the fire department of that city. The fire department was called out by a fire alarm, and the appellant, in company with the chief, was making the run in the latter's wagon. The appellant was driving at a gallop through one of the main streets when a collision occurred with a carriage in which Fred Bowers and his wife were riding, and Mrs. Bowers was thrown out, receiving injuries from which she afterward died. The accident occurred at about seven o'clock in the evening, while a band concert was being given from a temporary stand erected in a part of the street. The street was filled with vehicles and a crowd of persons in attendance on the concert. The appellant was off duty from six o'clock in the evening, and at about seven o'clock met Harry Scott, the chief of the department, two or three blocks from where the crowd was gathered. Scott had not been on duty during the day, and was intoxicated. He had been threatening to turn in a false alarm and have the department make a run to see the crowd scatter. C. H. Peek, who was with Scott, was attempting to prevail upon him not to do so and asked the appellant to take charge of Scott and get him home, and warned the appellant not to permit Scott to turn in an alarm because it would result in injuring or killing some one. Brecount replied, in substance, that Scott was chief and had a right to call out the department if he wanted to do so. Soon after this Scott turned in an alarm

from a box on the corner and gave the location of the fire in a block on south "A" street, to reach which would take the fire department through the crowd then surrounding the band stand. After turning in the alarm, Scott and the appellant ran to the fire department building, where the latter hitched the horse to the chief's wagon, and together they drove down the street as fast as the horse could travel. The appellant was driving and Scott was whipping the horse. This occurred several minutes after the alarm had been turned in and after the fire department had made its run, so that by the time the rig driven by the appellant reached the vicinity of the crowd many of the persons who had followed the first fire wagon and had learned that the alarm was a false one were returning in the direction of the band stand. Among them was Fred Bowers, in a carriage with his wife and two other persons. Bowers was on the left-hand, or wrong, side of the street. He saw the danger he was in and attempted to get out of the way, and called out a number of times, warning the appellant not to drive into his rig. The horse which the appellant was driving was whipped until within a short distance from the place where the collision occurred. Immediately after the accident Bowers asked the appellant why he drove into him, and the appellant exclaimed, "G— d— you, we will teach you to keep on your own side of the street."

There was little conflict in the evidence. The appellant's witnesses testified that during the time he was driving down the street he held a tight rein on the horse, that the gong was sounded continuously, and the witnesses saw nothing unusual in the manner in which the run was made.

The principal contention of the appellant is that the homicide was excusable within the definition of section

1995 of the General Statutes of 1901 (Gen. Stat. 1868, ch. 31, § 10), which, so far as applicable here, reads:

"Homicide shall be deemed excusable when committed by accident or misfortune . . . or in doing any other lawful act by lawful means, with the usual and ordinary caution, and without unlawful intent."

It is urged that the evidence of the state established that the appellant was engaged in a lawful act by lawful means, with the usual and ordinary caution, and without unlawful intent. In this we are unable to concur. In the argument particular stress is laid upon the fact that the appellant was doing the act in the usual and ordinary manner. It may be conceded that the run was being made in the usual and ordinary manner, so far as the speed of the horse, the ringing of the gong and the keeping of a tight rein on the horse were concerned. And, if there had been an actual alarm or one which required the appellant to make the run, and while making it in good faith the same accident had occurred, the appellant would not have been criminally responsible for the consequences. But in order to bring an act within the protection of the statute something more is required than that it be done with the "usual and ordinary caution." There must be absence of "unlawful intent." It is apparent from the evidence that the alarm was turned in, not in good faith for the purpose of making a practice run, but with the avowed purpose of running through the crowd to see the people scatter, and that in the purpose the appellant was *particeps criminis*. There was no lack of evidence indicating the appellant's state of mind and his disregard of the rights of others. His profane exclamation immediately after the collision to the effect that he would teach Bowers to keep on the right side of the road, and the circumstances under which the alarm was turned in, demonstrate beyond any question that the act was committed with an un-

lawful intent, that it was reckless, wanton and wholly inexcusable, the result of a desire to exhibit a little brief authority and to appear spectacular in the eyes of the people.    The act of the appellant in driving through the street in the manner he did might have been lawful on a proper occasion, but whether it was lawful in this instance depends upon whether it was done with a lawful intent.    It was the intent which made the act unlawful and took it outside the protection of a statute which was not designed to relieve persons from responsibility for criminal recklessness.

There is nothing substantial in the claim that the appellant was denied a preliminary examination. While the statute provides that a written complaint under oath shall be filed with the magistrate before the warrant issues (Crim. Code, § 36), there is another method provided by sections 1768 to 1771, inclusive, of the General Statutes of 1901. (Gen. Stat. 1868, ch. 25, §§ 127-130.)  Where there is a verdict of guilty by a coroner's jury it is made the duty of the coroner to issue his warrant, upon which the defendant is arrested and taken before a magistrate for a preliminary examination.   It is expressly provided that such warrant shall take the place of a complaint and be sufficient foundation for the proceeding before the justice. (Gen. Stat. 1901, §§ 1770, 1771.)   "Such a warrant is of equal authority with one issued by a justice of the peace."  (*The State v. Tennison*, 39 Kan. 726, 728.)

There was no error in the admission of testimony nor in the instructions, and the evidence in support of the motion for a new trial was merely cumulative.  We are satisfied that the appellant had a fair trial, and the judgment is affirmed.